```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------------X
                                                                      :
MERRILL LYNCH, PIERCE, FENNER & SMITH                                 :
INCORPORATED f/k/a BANC OF AMERICA                                    :
SECURITIES LLC,                                                       :        15-CV-4971 (JMF)
                                                                      :
                            Plaintiff,                                :        MEMORANDUM OPINION
                                                                      :             AND ORDER
            -v-                                                       :
                                                                      :
MARC A. OLIVER,                                                       :
                                                                      :
                            Defendant.                                :
                                                                      :
----------------------------------------------------------------------X
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 01/27/2016

JESSE M. FURMAN, United States District Judge:

Plaintiff Merrill Lynch, Pierce, Fenner & Smith Inc. brings this action against a former employee, Marc Oliver. Among other things, Plaintiff seeks to enjoin an arbitration that Defendant filed before the Financial Industry Regulatory Authority ("FINRA") and to obtain damages for Defendant's alleged breach of an earlier settlement agreement. Pursuant to Rule 56 of the Federal Rules of Civil Procedure, Plaintiff moves for summary judgment. (Docket No. 28). Defendant, proceeding *pro se*, not only opposes Plaintiff's motion, but also moves in his own right to dismiss, to compel arbitration, and for sanctions. (Docket Nos. 26, 34). For the reasons stated below, Plaintiff's motion is GRANTED in most respects (but deferred in one pending further briefing) and Defendant's motions are DENIED.

## BACKGROUND

The relevant facts are undisputed. From July 2000 until March 2004, Defendant was employed as a compliance officer by Plaintiff, at that time known as Banc of America Securities LLC ("BAS"). (Pl.'s Rule 56.1 Statement Undisputed Material Facts (Docket No. 30) ("Pl.'s

Rule 56.1 Stmt.") ¶¶ 1-3; Def.'s Response Pl.'s Rule 56.1 Statement Material Facts (Docket No. 36) ("Def.'s 56.1 Response") 9, 19).  Shortly after Defendant left BAS, Plaintiff filed a Form U-5 Uniform Termination Notice for Securities Industry Registration — as it was required to do by FINRA's predecessor, the National Association of Securities Dealers — listing the "reason" for Defendant's "termination" as "Involuntary — Other; Performance, Non-Securities Related." (Pl.'s Rule 56.1 Stmt. ¶¶ 4-5).  On May 2, 2005, Defendant filed a discrimination action against Plaintiff in this Court.  (Pl.'s Rule 56.1 Stmt. ¶ 16; Def.'s 56.1 Response 21).  A little more than two years later, on July 27, 2007, the case was dismissed with prejudice based on a settlement between the parties.  (Pl.'s Rule 56.1 Stmt. ¶ 18).

The settlement was memorialized in a General Release and Settlement Agreement signed by BAS and Defendant (who was represented by counsel when he negotiated and signed the Agreement).  (Pl.'s Rule 56.1 Stmt. ¶¶ 17-18; *see* Compl. (Docket No. 1), Ex. 2 ("Release Agreement") ¶¶ 4, 18).  To the extent relevant here, Defendant released any claims against BAS "arising out of his employment relationship with BAS, and/or the termination of such employment relationship," including "all unknown, unsuspected or unanticipated injuries and damages . . . which arose prior to [his] execution of this Agreement."  (Release Agreement ¶¶ 6-7).  The parties agreed that "any action involving the validity, interpretation or enforcement of this Agreement . . . or claiming breach thereof, shall exist exclusively in a court or government agency located within the State of New York and City of New York."  (*Id*. ¶ 21).  In addition, the parties expressly agreed that the Release Agreement constituted the "entire agreement" between the parties and "supersede[d] any and all prior agreements."  (*Id*. ¶ 24).  In consideration for releasing BAS from all claims, Defendant received $100,000 from BAS.  (*Id*. ¶ 4).

In March 2015, Defendant commenced an arbitration proceeding against Plaintiff before FINRA. (Compl., Ex. 1 ("FINRA Compl.") 1). In his Statement of Claim, Defendant asserts claims for (1) "libel," (2) "blacklisting," (3) "tortious interference with prospective advantage," (4) "tortious negligent interference with prospective advantage," (5) "breach of covenant of good faith and fair dealing," and (6) "material, fundamental and anticipatory breach of general release and settlement agreement." (*Id.*). More specifically, Defendant's claims relate to purportedly false statements in the Form U-5 (regarding the end of his employment with BAS) and to the Release Agreement. (*Id.* at 4; Pl.'s Rule 56.1 Stmt. ¶¶ 32-33). Significantly, however, Defendant does not allege any wrongful actions taken by BAS (or Plaintiff) after the Release Agreement was signed — which is to say that, although he purports to bring claims based on the Release Agreement itself, *all* of his claims arise from the Form U-5 and conduct by BAS predating the Release Agreement. (Pl.'s Rule 56.1 Stmt. ¶¶ 32-33).

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate where the admissible evidence and the pleadings demonstrate "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In ruling on a motion for summary judgment, all evidence must be viewed "in the light most favorable to the non-moving party," *Overton v. New York State Division of Military & Naval Affairs*, 373 F.3d 83, 89 (2d Cir. 2004), and the Court must "resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought," *Security Insurance Company of Hartford v. Old Dominion Freight Line, Inc.*, 391 F.3d 77, 83 (2d Cir. 2004). A dispute over an issue of material fact qualifies as genuine if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving

party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). "In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant's burden will be satisfied if he can point to an absence of evidence to support an essential element of the nonmoving party's claim." *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995); *accord PepsiCo, Inc. v. Coca-Cola Co.*, 315 F.3d 101, 105 (2d Cir. 2002). Here, because Defendant is proceeding *pro se*, the Court must grant him "special solicitude." *Tracy v. Freshwater*, 623 F.3d 90, 100-04 (2d Cir. 2010). Such special solicitude is not unlimited, however. Provided the moving party has met its initial burden of demonstrating the absence of a genuine issue of material fact, a *pro se* party opposing summary judgment must still "come forward with evidence demonstrating that there is a genuine dispute regarding material fact." *Bennett v. Bailey,* No. 07–CV–7002 (PKC), 2010 WL 1459192, at *3 (S.D.N.Y. Apr. 9, 2010).

## DISCUSSION

Plaintiff seeks primarily to enjoin the FINRA arbitration and a declaration that Defendant's claims are not arbitrable. (*See* Pl.'s Mem. Law Supp. Mot. Summ. J. (Docket No. 29) ("Pl.'s Mem.") 1). It is well established that a district court may enjoin arbitration proceedings that are not covered by a valid and binding arbitration agreement. *See, e.g.*, *In re Am. Exp. Fin. Advisors Sec. Litig.*, 672 F.3d 113, 142 (2d Cir. 2011). Simply put, although there is a long history of "liberal federal policy favoring arbitration agreements," *Moses H. Cone Memorial Hospital v. Mercury Construction Corp*., 460 U.S. 1, 24-25 (1983), "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit," *Howsam v. Dean Witter Reynolds, Inc.,* 537 U.S. 79, 83 (2002) (quotation marks omitted). Under New York law, which applies here, "a written agreement that

is complete, clear[,] and unambiguous on its face must be enforced according to the plain meaning of its terms." *Greenfield v. Philles Records, Inc.*, 98 N.Y.2d 562, 569 (2002). Further, if an agreement contains a mandatory forum selection clause that "substantively exclude[s]" arbitration, it trumps any early agreement to arbitrate — even if it does not explicitly reference arbitration or nullify the earlier agreement. *Goldman, Sachs & Co. v. Golden Empire Sch. Fin. Auth.*, 922 F. Supp. 2d 435, 440-41 (S.D.N.Y. 2013), *aff'd*, 764 F.3d 210 (2d Cir. 2014).

In this case, Defendant alleges that he signed an arbitration agreement with BAS when he began his employment there in July 2000 and, on that basis, contends that his claims should be decided in arbitration. (FINRA Compl. at 6). The Release Agreement, however, contains a merger clause and, thus, expressly supersedes any and all previous agreements, including the agreement upon which Defendant relies. (Release Agreement ¶ 24). Equally important, the Release Agreement does not contain an arbitration clause; instead, it includes a mandatory forum selection clause identifying the New York courts as the forum to resolve any and all claims between the parties. (General Release ¶ 21). By its plain and unambiguous terms, that clause "specifically preclude[s]" the disputed arbitration. *Applied Energetics, Inc. v. NewOak Capital Markets, LLC*, 645 F.3d 522, 525 (2d Cir. 2011); *accord J.P. Morgan Secs. LLC v. Quinnipiac Univ.*, 14-CV-429 (PAE), 2015 WL 2452406, at *5 (S.D.N.Y. May 22, 2015); *Goldman, Sachs & Co.*, 922 F. Supp. 2d at 440-41; *Spanski Enters., Inc. v. Telewizja Polska, S.A.*, No. 07-CV-930 (GEL), 2007 WL 1187870, at *5 (S.D.N.Y. Apr. 23, 2007). Thus, Defendant's claims are not subject to arbitration, and Plaintiff is entitled to an injunction barring the arbitration.[1]

---

[1] Defendant argues that the Release Agreement is unconscionable (Def.'s Mot. To Dismiss (Docket No. 26) at 35, 62), but that argument borders on frivolous. First, he does not even come close to establishing that the Release Agreement was "so grossly unreasonable or unconscionable in the light of the mores and business practices of the time and place as to be unenforceable according to its literal terms." *Sablosky v. Edward S. Gordon Co.*, 73 N.Y.2d 133, 138 (1989)

Notably, even if Defendant's claims did fall within the scope of a valid arbitration agreement, Plaintiff would be entitled to the relief it seeks for multiple reasons. For one thing, all of Defendants' claims arise out of his termination by BAS and were therefore released by the Release Agreement he signed. (Release Agreement ¶ 6). In particular, the U5 Form upon which Defendant's claims are premised was completed in 2004 — three years before he signed the Release Agreement. And although Plaintiff alleges that he did not discover BAS's statements until years later, the Release Agreement extends to "*all* unknown, unsuspected and unanticipated injuries and damages" that "arose" prior Defendant's to execution of the Agreement. (*Id*. ¶ 7 (emphasis added)). *See, e.g.*, *Waksman v. Cohen*, No. 00-CV-9005 (WK), 2002 WL 31466417, at *11 (S.D.N.Y. Nov. 4, 2002) ("Since [the Plaintiff] expressly and unambiguously agreed to release those claims . . . even if they were 'unknown' to him at the time of the settlement, the Plaintiff cannot now avoid the effect of the Stipulation of Settlement and release of claims by arguing that the Stipulation and release do not apply to claims which were then unknown to him."). Second, and in any event, it is well settled that statements made by an employer on the mandatory Form U5 are absolutely privileged under New York law. *See Rosenberg v. MetLife, Inc.*, 8 N.Y.3d 359, 368 (2007); *see also Rosenberg v. MetLife, Inc.*, 493 F.3d 290, 291 (2d Cir. 2007). That privilege shields a party from liability for an "otherwise defamatory statement," regardless of the party's motive in making the statement. *Rosenberg*, 493 F.3d at 291. As all of

---

(internal quotation marks omitted). In fact, most of his complaints appear to be directed at his own counsel's conduct, which is not a basis for voiding an otherwise valid agreement. *See, e.g.*, *Martens v. Smith Barney, Inc.*, No. 96-CV-3779 (CBM), 2002 WL 867666, at *4 n.4 (S.D.N.Y. May 3, 2002). Second, and in any event, under New York law, an unconscionable agreement is voidable, not void. *See, e.g.*, *United States v. Twenty Miljam-350 IED Jammers*, 669 F.3d 78, 89 (2d Cir. 2011). Because he failed to promptly repudiate the Release Agreement — and accepted the consideration that he received pursuant to it — Defendant cannot now avoid its terms. *See, e.g.*, *DiRose v. PK Mgmt. Corp.*, 691 F.2d 628, 633-34 (2d Cir. 1982) (holding that a party who has failed to promptly repudiate a voidable contract will be deemed to have waived that right).

Defendant's claims — whether for libel or otherwise — are premised on BAS's statements in the Form U5 being false and defamatory, it follows that they are barred.[2]

Finally, Plaintiff seeks damages — namely, recovery of its attorney's fees and costs — for Defendant's alleged breach of the Release Agreement.  To establish breach of contract under New York law, a plaintiff must establish: (1) the existence of a contract; (2) breach of that contract; and (3) damages resulting from the breach.  *Nat'l Mkt. Share, Inc. v. Sterling Nat. Bank*, 392 F.3d 520, 525 (2d Cir. 2004).  Here, it is undisputed that a contract exists between the parties in the form of the Release Agreement.  Further, Defendant plainly breached the provision of that Agreement stating he would not "in any manner institute, prosecute or pursue, any and all complaints, claims . . . or causes of action . . . against BAS."  (Release Agreement ¶ 6).  But Plaintiff cites no authority or provision of the Release Agreement that would warrant a departure from the standard "American Rule" that parties must bear their own fees and costs absent a statutory or contractual provision.  (In fact, Paragraph 15 of the Release Agreement disclaims the parties' right to seek fees and costs "relating to any matters addressed in [the] Agreement.").  Additionally, the practice in this Court appears to be that attorney's fees are not recoverable as damages in an action for breach of a settlement agreement.  *See, e.g.*, *Hostcentric Tech.., Inc. v. Republic Thunderbolt, LLC*, No. 04-CV-1621 (KMW), 2005 WL 1377853, at *10 (S.D.N.Y. June 9, 2005); *Five and One, Inc. v. Pine Tavern, Inc.*, No. 00-CV-4556 (LAK), 2003 WL 21357123, at *2 (S.D.N.Y. June 12, 2003).  Finally, although the Court has authority to award fees if a losing party's conduct was in bad faith, vexatious, or wanton, *see, e.g.*, *Torres v. Costich*, 935 F. Supp. 232, 236 (S.D.N.Y. 1996), Plaintiff has not even attempted to show how

---

[2]    Plaintiff argues that Defendant's claims are not arbitrable for two other reasons: because they are time barred and because of *res judicata*.  (Compl. ¶ 4).  Although both arguments have some merit, the Court need not and does not reach them.

that standard is met here; further, the Court would be disinclined to award fees in light of Defendant's *pro se* status.  Accordingly, Plaintiff is hereby ORDERED to show cause no later than **February 10, 2016**, in a brief not to exceed ten double-spaced pages, why its request for attorney's fees should not be denied.  Unless the Court orders otherwise, Defendant shall file any response by **February 24, 2016**.  No reply is permitted without leave of the Court.

## CONCLUSION

For the reasons stated above, Plaintiff's motion for summary judgment is GRANTED in in part, and the Court reserves judgment on whether Plaintiff is entitled to attorney's fees and costs for Defendant's breach of the Release Agreement.  It follows from the grant of summary judgment to Plaintiff that Defendant's motions to dismiss and to compel arbitration are DENIED as moot; Defendant's motion for sanctions is also DENIED, as it is frivolous.[3]

The Clerk of Court is directed to terminate Docket Nos. 28 and 43.

SO ORDERED.

Date: January 27, 2016
New York, New York

_____
JESSE M. FURMAN
United States District Judge

---

[3] Defendant's motion for sanctions is both procedurally and substantively defective.  As a procedural matter, to the extent that Defendant's motion is based on Rule 11 of the Federal Rules of Civil Procedure, it does not comply with Rule 11(c)(2), which requires that it be served on the opposing party at least twenty-one days before it is filed.  *See Fierro v. Gallucci*, 423 F. App'x 17, 19 (2d Cir. 2011).  As a substantive matter, sanctions are available under Rule 11 only in "extraordinary circumstances," *Park v. Seoul Broad. Sys. Co.*, No. 05-CV-8956 (BSJ) (DFE), 2008 WL 619034, at *1 (S.D.N.Y. Mar. 6, 2008), and under Rule 56(h) only when an attorney's conduct is "egregious," *Jaisan, Inc. v. Sullivan*, 178 F.R.D. 412, 415-16 (S.D.N.Y. 1998).  Here, there is no evidence that Plaintiff or counsel engaged in any misconduct, let alone misconduct meeting those high standards.